## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JASON NEAL, | |
|     Plaintiff, | |
| v. | CIVIL ACTION FILE NO. 1:16-cv-00184-WSD |
| DEKALB COUNTY, GEORGIA; OFFICER C.A. INGS, OFFICER M.T. HAMER, in their individual and official capacities; JOHN DOE 1-2, in their individual and official capacities, | |
|     Defendants. | |

## REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants M.T. Hamer and C.A. Ings, in their individual capacities, and file this Reply to Plaintiff's Response (opposing) their summary judgment motion to clarify the issues before this Court and to focus on the issues in this matter.

**I.**     <u>**Plaintiff's Response Brief Focuses on Facts that are not Material.**</u>

Plaintiff bears the burden of proving each element of his claims. In his response, Plaintiff fails to identify specific facts, material to the elements of his

claims, that are in dispute. Rather, he asserts conclusions he believes the Court should reach based upon his twist of the facts. Plaintiff's twist, however, misrepresents the facts, takes them out of context or only provides half of the facts. Additionally, he attempts to refute his earlier sworn testimony by submitting an affidavit which does nothing more than present conclusory statements and immaterial matters that do not support the elements of his claim. An affiant who submits an affidavit contradicting the affiant's prior sworn testimony creates a sham issue, not a genuine fact issue. *See Harris v. Equifax*, No. 1:04-CV-2194CAM, 2006 WL 819757, at *10 (N.D. Ga. Mar. 23, 2006). He has not sustained his burden.

For example, Plaintiff concludes that after opening store merchandise and leaving the premises with the packaging, Defendants had no good reason to question him. He describes their investigation into the whereabouts of the unwrapped merchandise as an "attempt to hector him." *(Plaintiff's Response Brief,* p. 2*)*. According to Plaintiff, his attempt to "disengage the conversation" while directing obscenities to the officers was "merely a loud conversation." *Id*. at 3. Plaintiff's attempts to downplay his aggression are unavailing.  He admitted in his own deposition that he was "upset", "angry" and "indignant." *(Neal Dep*. p. 16: 16-25).

He also avers that he was talking "pretty loud", enough for other people in the store to hear him. *Id*.

Plaintiff references portions of an inaudible surveillance video to drive the assertion that he was "not acting violently, aggressively or recklessly so as to trigger the ordinance." (*Plaintiff's Response Brief* at 8). Even Plaintiff's array of conveniently selected video samples fail to support his conclusions. At the very times Plaintiff contends he was calmly answering officer questions, the video clearly shows numerous patrons, and even employees, entering the store and looking in the direction of the altercation. *(Main Entrance Video*, 9:44:00-9:55:00). Plaintiff unpersuasively contends that because Officer Hamer is holding a beverage during the conversation, he must be unconcerned with Plaintiff's conduct. (*Plaintiff's Response Brief* at 3). But it is also clear from the video that on at least two separate occasions during the conversation, Defendant Hamer puts the beverage down to address Plaintiff and presumably to gain control over the situation. (*Returns Video*, 9:44:45 and 9:46:25). Defendant Hamer can be seen using a hand gesture so as to calm Plaintiff down as he continues to be argumentative and unruly. (*Main Entrance Video*, 9:44:07-15). Around that same time and also patently obvious from the video excerpts is Plaintiff rocking back and forth, pacing the floor near the register and

aggressively pointing at the officers. (*Returns Video*, 9:46:00-9:46:35). Moments later, Defendant Ings is seen placing his things down and going outside, presumably to get his citation booklet. (*Returns Video*, 9:46:35). Even after receiving his citation, Plaintiff can be seen reentering the store and interrupting an employee who is attempting to hang a sign in the store window before being approached again by the officers. (*Main Entrance Video*, 9:53:00-9:54:00).

Even without sound, this video does nothing to support the position that Plaintiff did not cause a scene or disturbance and ultimately all of this video deflection only serves to draw the court's attention away from the actual issues. Contrary to Plaintiff's characterization, this case is not about whether in fact Plaintiff was guilty of disorderly conduct. All of the evidence material to Plaintiff's claims demonstrates that at the time of his citation, Defendants were trying to deescalate the matter but Plaintiff refused to calm himself and leave the premises. As evidenced below and in Defendant's original motion, Plaintiff was cited for his conduct as a whole and Defendants had arguable probable cause to believe he was in violation of the ordinance.

**II.     Plaintiff's Response Brief Focuses on His Speech Alone and Erroneously Misstates the True Reason for His Citation.**

As evidenced by his arguments in the response motion, Plaintiff refuses to recognize that his conduct and not his speech alone are what led to his citation. Because Plaintiff has chosen to focus on irrelevant facts, he has conflated the issues and failed to establish that Defendants are not entitled to qualified immunity. Defendants take this opportunity to redirect the Court's attention to the material facts of this case and the appropriate legal standards that apply here.

**A. Defendants Did Not Violate Plaintiff's Constitutional Rights Because They Did Not Cite Him for His Speech.**

Plaintiff's main assertion is that the statements he made on the day he was cited are insufficient by themselves to rise to the level of conduct punishable under the ordinance. To be clear, the ordinance is applicable to not only Plaintiff's speech but his entire conduct that day. And under their interpretation of the ordinance, whether their interpretation was right or wrong, the officers could cite him regardless of the later adjudication on the charge. Probable cause does not require convincing proof, and need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). Moreover, Plaintiff's conduct that day should not be viewed in a vacuum.

Defendants admitted that they based their decision to cite Plaintiff on a number of different things, not just his speech. Contrary to Plaintiff's pronouncements, he was observed not only cursing loudly, but becoming disruptive, drawing onlookers, and refusing repeated requests to leave.  (*Hamer Dep*. p.53: 22-25, p. 54:1-2; *Burgess Aff*. ¶¶6-8; *Holmes Aff*. ¶¶7-9).

Defendants decided to cite Plaintiff based on these observations, despite Plaintiff's belief that he was cited for exercising his First Amendment rights to merely have a loud conversation. Plaintiff's oversimplified characterization of his behavior runs contrary to the record evidence. The fact of the matter is Plaintiff became verbally abusive towards the officers and disturbed Home Depot business. (*Burgess Aff.* ¶6). Customers and employees grew concerned about the altercation and witnesses agreed that Plaintiff's removal from the store was necessary to deescalate the situation. (*Burgess Aff*.¶¶6-10; *Holmes Aff*.¶¶7-9). Officers in an unsuccessful attempt to calm Plaintiff, later decided to cite him not merely for his vulgar words, but his conduct as a whole. (*Ings Dep*. p. 23:9-18; p. 26:14-21). Based on the totality of the circumstances and the information they possessed at the time they had a reasonable belief that his actions violated the DeKalb County Ordinance.

Plaintiff has pointed to no evidence to prove that Defendant's conduct was retaliatory and shown no causal connection between Plaintiff's speech and his arrest as required to make out a First Amendment claim[1]. Moreover, Plaintiff ignores the testimony of both the officers and the affidavits provided by witnesses to his conduct. Contrary to his baseless allegations, Defendants had no motivation to deter the exercise of free speech. Their only motivation was to establish some order on the premises and settle the disruption.

Lastly, because his argument that his First Amendment rights were violated is without merit, Plaintiff's due process claims fail. Plaintiff was not cited for his speech nor was he cited for looking at Detective Hamer in the eyes or protesting the officers' claims. (*Plaintiff's Response Brief* at 13). Plaintiff's assertion that these other actions led to his citation do not have any basis in fact and are just a smoke screen to take attention away from his actual behavior that day and the actual facts in this case. Defendants, on the other hand, have been very clear about what aspects

---

[1] The elements of a Section 1983 First Amendment claim are (1) the plaintiff engaged in speech or an act that was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

of Plaintiff's conduct they found troubling, what led to their finding of probable cause and the material facts that should be applied to the Court's legal analysis.

### B. Defendants Had Arguable Probable Cause To Cite Plaintiff Under the Ordinance Based on His Speech and Conduct Together.

As previously stated, the standard to determine if an arrest constitutionally violates a person's rights sufficient to support a claim under §1983 is whether there was "arguable probable cause" to make the arrest. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). Arguable probable cause is evaluated by determining whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant, could have believed that probable cause existed to arrest." *Id.* Plaintiff argues that because Defendants admitted that he was not insulting, demeaning, inciting or threatening anyone, that this proves he could not have been guilty of the ordinance[2] and in turn, the Defendants could not have arguable probable cause. He also argues that because his words were not "fighting words" he could not be cited for disorderly conduct.

---

[2] The DeKalb Disorderly Conduct Ordinance provides:
(a)It shall be unlawful for any person to act in a loud and boisterous, reckless, unruly or violent manner for the purpose of insulting, degrading, or inciting another or a group of individuals in a public place.
(b)It is not the intent of this section to restrict any individual's right to free speech. DeKalb County Ord. §16-58.

Contrary to Plaintiff's belief, the qualified immunity inquiry does not depend on whether he is guilty of the ordinance or whether his words were "fighting words." Defendants decided to cite Plaintiff based on their **reasonable belief** that his actions violated the DeKalb Ordinance. These are judgment calls they are allowed to make without concern for personal liability or burdensome lawsuits. This is why "arguable" probable cause and not "actual" probable cause is required. *See Lee, id*. The doctrine of qualified immunity gives government officials the breathing room to make reasonable but mistaken judgments and aims to "protect all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 135 S.Ct. 348, 350 (2014). Therefore, even if Defendant's belief that Plaintiff's conduct violated the ordinance was wrong, they were not "plainly incompetent" in acting on that belief.

If the court takes Plaintiff's version of the facts as true, determining whether Plaintiff was in fact being disorderly under the DeKalb County Code is irrelevant to the qualified immunity analysis that he claims Defendants are not entitled to. The Eleventh Circuit has held that the qualified immunity standard is an objective standard under which "the subjective intent of [a] government actor defendant plays no part." *Koch v. Rogg*, 221 F.3d 1283, 1295 (11th Cir. 2000); *see also Anderson v.*

*Creighton*, 483 U.S. 635, 641 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)(noting that a government actor's subjective beliefs about the legality of his conduct are irrelevant to qualified immunity analysis); *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139(1984)(recognizing that qualified immunity is evaluated under a *purely objective standard* without consideration for the government actor's subjective belief).  Therefore, even assuming arguendo that Plaintiff was incorrectly cited for disorderly conduct under the DeKalb Ordinance (as alleged by Plaintiffs and which Defendants strongly dispute), the proper determination is not whether Plaintiff was being disorderly, but whether *every* other officer in Defendants' position would have believed the citation was manifestly illegal under the circumstances.

Plaintiff relies on the decision in the *Wilkerson v. Seymour* case[3] for the proposition that Defendants cannot cite him under the ordinance for "fighting words."  Plaintiff is correct.  However, he was not cited for his words.  As established in their motion for summary judgment, *Wilkerson* is factually different and not materially similar to the case at bar.  In *Wilkerson*, the Eleventh Circuit focused on the words used (analyzing whether "damn" and "hell" are in fact fighting words)

---

[3] 736 F.3d 974 (11th Cir. 2013).

because the facts of that case showed that the Plaintiff had not specifically directed those words at the officers. Moreover, there was no other conduct and behavior involved to trigger the arrest under the ordinance. *Wilkerson*, 736 F.3d at 979 (11th Cir. 2013). The Eleventh Circuit implied, however, that qualified immunity may have been granted had it been undisputed that others were present during Wilkerson's altercation with police who could have been incited by Wilkerson's conduct. *Id*. at 979. In this case, it is undisputed that Home Depot customers and employees were present for Plaintiff Neal's altercation with Defendants and that he was spewing profanities at them. (*Neal Dep*. p.16:22-25; *Burgess Aff*. ¶6; ¶¶8-9; *Holmes Aff*. ¶¶8-12). Because of these differences, Plaintiff cannot show that a reasonable officer at that time would have known, based on clearly established law, that there could be no probable cause to arrest Plaintiff for his admitted conduct.[4] Plaintiff's argument that whether or not he was loud and boisterous as prescribed by the ordinance is in dispute is contrary to his own sworn testimony.

Instead of acknowledging the evidence that led to the Defendant's **arguable** probable cause, Plaintiff points out what he calls "contradictions" between the

---

[4] The Eleventh Circuit's 2015 *Wilkerson* decision (626 Fed. Appx. 816) was decided more than a year after Neal's altercation with Defendants. As such, the 2015 *Wilkerson* decision is not relevant to the qualified immunity determination in this case, because a reasonable officer could not have known in 2013 about a decision the Eleventh Circuit would not issue until 2015.

testimony of the officers and that of the affiants. These are not contradictions, but rather corroborating evidence that severely weakens Plaintiff's claims. The fact that the officers testified that no one in the vicinity was threatened, incited, demeaned or insulted does not mean Plaintiff did not violate the ordinance. Nor does it show a lack of arguable probable cause. In light of the information Defendants possessed and the observations they made at the time, any other officer could have reasonably believed that probable cause existed to arrest him. *See Rankins v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)(probable cause exists at the time of arrest when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe under the circumstances shown, that the suspect has committed, is committing or is about to commit an offense). Defendants did not have to speak to every witness, take statements, or wait for a formal complaint from onlookers to cite Plaintiff. It was obvious that Plaintiff was causing a disturbance in the store. No fewer than four observers have testified to this fact under oath. And whether Defendants relied on their own observations or that of others within the store is of no consequence. They did not have to know what was going through the minds of the affiants at the time to reasonably consider Plaintiff's conduct disorderly. But the fact that other

witnesses corroborate Defendants' version of the facts at this time supports the determination that arguable probable cause existed and that Defendants are entitled to qualified immunity.

The affidavits presented by Defendants are no more conclusory and speculative than the Plaintiff's self-serving submission of the surveillance video. The sections of the video he references do not support his conclusions let alone help his case. In the very same portions of the video that Plaintiff claims illustrate he was calm and compliant, he can be seen going back and forth with the Defendants, becoming increasingly upset. Plaintiff has not meet his burden in overcoming Defendants' motion for summary judgment because the facts as he presents them simply do not support his claims.

### III.   CONCLUSION

Defendants are entitled to judgment as a matter of law because Plaintiff has failed to come forward with admissible evidence of material facts to support the essential elements of his claims. Accordingly, it is appropriate for this Court to grant Defendants' motion for summary judgment.

Respectfully submitted this 20th day of July, 2017.

                              KENDRIC E. SMITH
                              SUPERVISING COUNTY ATTORNEY
                              Georgia Bar No. 661200

                              *s/Tiffany B. Harlow*
                              TIFFANY B. HARLOW
                              ASSISTANT COUNTY ATTORNEY
                              Georgia Bar No. 141386

                              Attorneys for Defendants

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

Kendric E. Smith
Supervising Attorney
Tiffany B. Harlow
Assistant County Attorney
DeKalb County Law Department
1300 Commerce Drive, 5th Floor
Decatur, GA 30030
(404) 371-3011 (phone)
(404) 371-3024 (fax)
kesmith@dekalbcountyga.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **JASON NEAL,**<br><br>　　**Plaintiff,**<br><br>v.<br><br>**DEKALB COUNTY, GEORGIA; OFFICER C.A. INGS, OFFICER M.T. HAMER, in their individual and official capacities; JOHN DOE 1-2, in their individual and official capacities,**<br><br>　　**Defendants.**<br>_____ | **CIVIL ACTION FILE NO.
1:16-cv-00184-WSD** |

## **CERTIFICATE OF SERVICE**

This is to certify that in addition to electronically filing the attached **REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, thereby automatically sending e-mail notification of such filing to the opposing party in the foregoing matter, I have also deposited a copy of same in the U.S. mail in a properly addressed envelope with adequate postage thereon to ensure delivery, addressed to attorney of record as follows:

Kirby Clements, Jr., Esq.
Clements Law Group, LLC
3564 Wesley Chapel Rd., Suite E-229
Decatur, GA 30034

Respectfully submitted this 20th day of July, 2017.

*s/Tiffany B. Harlow*
Tiffany B. Harlow
Assistant County Attorney
Georgia Bar No. 141386