## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **JASON NEAL,** | |
| **Plaintiff,** | |
| **v.** | **1:16-cv-184-WSD** |
| **DEKALB COUNTY, GEORGIA; OFFICER C.A. INGS, OFFICER M.T. HAMER, in their individual capacities and individual capacities; JOHN DOE 1-2, in their individual and official capacities,** | |
| **Defendants.** | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendants Officer C.A. Ings and Officer

M.T. Hamer's (collectively, "Defendants"), in their individual capacities, Motion

for Summary Judgment [32] ("Defendants' Motion") and Plaintiff Jason Neal's

("Plaintiff") Motion for Summary Judgment [35] (Plaintiff's Motion).

## I. BACKGROUND

### A. Facts[1,2]

On November 8, 2013, while at the Home Depot, at 4325 New Snapfinger Woods Drive, Decatur, Georgia, Plaintiff and his co-worker "slipped out" a piece of a plumbing product from its package to see if it was the product they needed for a plumbing job. (D. SUMF ¶ 4; R-D. SUMF ¶ 4; Deposition of Jason Neal ("Neal Dep.") at 13-15). Plaintiff placed the product on the display case, went to the return counter, and told his co-worker to get something from their car. (D. SUMF ¶ 4; R-D. SUMF ¶ 4; Neal Dep. at 11:8-24). When the co-worker exited the store to go to the car, he set off the security sensors because he "inadvertently" took the

---

[1] The facts in this section are taken from the following statements of fact submitted in accordance with Local Civil Rule 56.1: Defendants' Statement of Undisputed Material Facts [37] ("D. SUMF"), Plaintiff's Response to Defendants' SUMF [46] ("R- D. SUMF"), Defendants' Statement of Additional Facts [54] ("D. SAMF") Plaintiff's Statement of Undisputed Material Facts [35.1] ("P. SUMF"), Defendants' Response to Plaintiff's Statement of Undisputed Material Facts [53] ("R-P. SUMF"), and Plaintiff's Statement of Additional Facts [47] ("P. SAMF"). In those instances where a party disputes a factual assertion contained in one of the statements of fact, the Court also considers the specific exhibits cited in support of the assertion. See LR 56.1(B)(3), NDGa (providing that the court deems a party's SUMF citation as supportive of the asserted fact "unless the respondent specifically informs the court to the contrary in the response").

[2] Because they address the same legal and factual issues, the Court addresses Plaintiff's and Defendants' respective motions for summary judgment collectively. See, e.g. Cutis v. Metro Prop & Cas. Ins. Co., No. 1:14-CV-451-LMM, 2015 WL 11237034, at *2, n. 5 (N.D. Ga. May 13, 2015).

empty package with him.  (D. SUMF ¶ 3; R-D. SUMF ¶ 3).  Defendants Ings and Hamer, POST-certified DeKalb County police officers who were working as part-time security officers at the store during the incident, stopped Plaintiff's co-worker.  (D. SUMF ¶¶ 2, 5; R-D. SUMF ¶ 3).  Defendants were wearing their DeKalb County Police Department uniforms at the time.  (Deposition of Charles Ings ("Ings Dep.") [34] at 47:5-7).

Plaintiff's co-worker told Defendants Ings and Hamer that Plaintiff was at the return counter, and Plaintiff walked Defendants to the aisle where he left the contents of the package they opened.  (D. SUMF ¶ 6; R-D. SUMF ¶ 6).  Defendants questioned Plaintiff about the product he removed from the package.  (D. SUMF ¶ 7; R-D. SUMF ¶ 7).  During their discussion about the empty package, Plaintiff became increasingly upset because Defendants continued to insist he submit to a search.  (D. SUMF ¶ 8; R-D. SUMF ¶ 8; Neal Dep. at 16:20-21, 17:2-13, 18:8-9).  Plaintiff told Defendants that he "didn't steal s___."  (D. SUMF ¶ 11; R-D. SUMF ¶ 11; Neal Dep. at 16:11-25, 18:8-12).  Plaintiff was "indignant about the situation," stating in his deposition:

> And I'm looking [at one of the Defendants] in the eyes and talking to the man like I'm looking at you and he told me if I don't stop looking at him that he was gonna arrest me; and I'm saying, well, why can't I look – I mean I ain't did nothing [sic].  Why can't I look at you?  And he told me to shut up, and I said I can talk.  I did say I can talk and

I'm talking to you now, and he just went on and on. . . . And then I
said I want to talk to the manager.

(Neal Dep. at 17:13-20). Customers and Home Depot employees were in the

vicinity during Plaintiff's conversation with Defendants. (D. SUMF ¶ 11;

R-D. SUMF ¶ 11; Neal Dep. at 16:11-25, 18:8-12).

Unable to resolve the matter, and as a result of Defendant's conduct,

Defendants informed Plaintiff that he would be cited for disorderly conduct. (Neal

Dep. at 17:21-25). Defendants escorted Plaintiff outside of the store, searched

him, and issued him a citation for violating DeKalb County Ordinance § 16-58.[3]

(D. SUMF ¶ 18; R-D. SUMF ¶ 18; Ings Dep. at 44:17-21; Hamer Dep. 43:18-22).

After receiving the citation, Plaintiff was permitted to, and did, return to the store.

(D. SUMF ¶ 18, 21; R-D. SUMF ¶ 18, 21; Ings Dep. at 44:17-21; Hamer Dep.

43:18-22). Plaintiff returned to the store to retrieve contact information for

witnesses he might use in future litigation related to his disorderly conduct citation.

(Id.). Plaintiff was asked to leave the store shortly after he returned to collect the

---

[3]    DeKalb County Ordinance § 16-58 states:

(a) It shall be unlawful for any person to act in a loud and boisterous,
reckless, unruly or violent manner for the purpose of insulting,
degrading, or inciting another or a group of individuals in a public
place.
(b) It is not the intent of this section to restrict any individual's right to
free speech.

contact information. (D. SUMF ¶ 23; R-D. SUMF ¶ 12). He complied with the request to leave. (Id.). Plaintiff moved in the Recorder's Court for DeKalb County for a general demurrer on his citation for disorderly conduct. The motion was granted on July 14, 2014.

B.    Procedural History

On December 4, 2015, Plaintiff filed his Complaint in the Superior Court of DeKalb County asserting the following claims: (1) violation of Plaintiff's First Amendment rights, pursuant to 42 U.S.C. § 1983 (Count 1); (2) violation of Fourth Amendment right to be free from unlawful search and seizure, pursuant to Section 1983 (Count 2); (3) violation of Fifth and Fourteenth Amendment due process rights, pursuant to Section 1983 (Count 3); (4) false imprisonment, O.C.G.A. §51-7-20 (Count 4); (5) false arrest, O.C.G.A. §51-7-1 (Count 5); (6) malicious prosecution, O.C.G.A. §51-7-40 (Count 6); (7) violation of state constitutional right to free speech, Georgia Constitution, Art. I, Sec. I., Para V. (Count 7); (8) violation of state constitutional right to be free from unreasonable search and seizure, Georgia Constitution, Art. I, Sec. I., Para XIII (Count 8); (9) violation of state constitutional due process, Georgia Constitution, Art. I, Sec. I., Para I (Count 9); claims for injunctive and declaratory relief (Counts 10); and a cause of action for "proximate cause" (Count 11).

5

On January 20, 2016, Defendants removed the action to federal court. ([1]). On January 27, 2016, Defendants filed their Motion to Dismiss Plaintiff's Complaint [2] arguing that (1) Plaintiff's claims under 42 U.S.C §1983 against DeKalb County and Officers Ings and Hamer, in their official capacities, should be dismissed because Plaintiff failed to sufficiently show that a deprivation of Plaintiff's constitutional rights occurred as a result of an official policy or custom; (2) Plaintiff's Section 1983 claims against Officers Ings and Hamer in their individual capacities were barred by qualified immunity; (3) Plaintiff's state law claims against DeKalb County and Officers Ings and Hamer, in their official capacities, were barred by sovereign immunity and official immunity; and (4) Plaintiff failed to state a claim for false imprisonment, malicious prosecution, or false arrest. On June 27, 2017, the Court issued its ruling denying the Motion to Dismiss with respect to Plaintiff's Section 1983 claims against the Officer Defendants in their individual capacities for violations of the First Amendment (Count 1), Fourth Amendment (Count 2), and Fifth and Fourteenth Amendments (Count 3). ([6] at 21). The Court granted the Motion to Dismiss as to Plaintiff's remaining claims, and dismissed Defendant DeKalb County, Georgia from the action. (Id.).

On June 12, 2017, Defendants and Plaintiff filed their respective Motions for Summary Judgment.

## II.   LEGAL STANDARD

"Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ahmed v. Air France-KLM, 165 F. Supp. 3d 1302, 1309 (N.D. Ga. 2016); see Fed. R. Civ. P. 56.  "An issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" W. Grp. Nurseries, Inc. v. Ergas, 167 F.3d 1354, 1360 (11th Cir. 1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. at 1361 (quoting Anderson, 477 U.S. at 248).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying [materials] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The movant[ ] can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of

some element of its case on which it bears the ultimate burden of proof." Graham

v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999). The moving

party need not "support its motion with affidavits or other similar

materials *negating* the opponent's claim." Celotex, 477 U.S. at 323. Once the

moving party has met its initial burden, the nonmoving party must demonstrate

that summary judgment is inappropriate by designating specific facts showing a

genuine issue for trial. Graham, 193 F.3d at 1282. The nonmoving party "need

not present evidence in a form necessary for admission at trial; however, he may

not merely rest on his pleadings." Id. "[T]he mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue

of *material* fact." Anderson, 477 U.S. at 247-48.

   "If the evidence presented by the non-moving party is merely colorable, or is

not significantly probative, summary judgment may be granted." Apcoa, Inc. v.

Fid. Nat. Bank, 906 F.2d 610, 611 (11th Cir. 1990) (internal quotation marks

omitted) (quoting Anderson, 477 U.S. at 250). The party opposing summary

judgment "must do more than simply show that there is some metaphysical doubt

as to the material facts Where the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no genuine issue for trial."

Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)); cf. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (a party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict" (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997) (internal quotation marks omitted))).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott, 550 U.S. at 380. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury." Graham, 193 F.3d at 1282. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." Id.

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23; see Freeman v. JPMorgan Chase Bank N.A., 2017 WL 128002, at *4 (11th Cir. Jan. 13, 2017) (same); Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1247 (11th Cir. 1999) ("If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted.").

In the context of a qualified immunity determination, "at the summary judgment stage, . . . once [the court] ha[s] determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of [the officers'] actions . . . is a pure question of law." Penley v. Eslinger, 605 F.3d 843, 849 (11th Cir. 2010) (internal quotations omitted).

## III. DISCUSSION

Section 1983 "provides a cause of action against '[e]very person who, under color of any statute of any State . . . subjects, or causes to be subjected, any

citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Wyatt v. Cole, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983).  Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . ."  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

A.    Discretionary Authority

To be entitled to qualified immunity, a government official "bears the initial burden of showing he was acting within his discretionary authority." Valderrama v. Rousseau, 780 F.3d 1108, 1112 (11th Cir. 2015) (internal quotation marks omitted).  "[D]iscretionary authority [ ] include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority."  Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994).  The Court must "assess whether [the acts] are of a

type that fell within the employee's job responsibilities." Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). "[T]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." Id. at 1266.

The Court finds that Defendants' actions were undertaken pursuant to the performance of their duties and within the scope of their authority. Plaintiff does not question whether Defendants, while off-duty, were acting within their discretionary authority as police officers of the DeKalb County Police Department, and courts in this Circuit have regularly found police officers to have acted within their discretionary authority while off-duty. Gaillard v. Commins, 562 F. App'x 870, 873 (11th Cir. 2014) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004) ("An officer may act within his discretionary function even when he is off-duty" as long as "the officer 'was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'"); see also Bouye v. Marshall, 102 F. Supp. 2d 1357, 1362 (N.D. Ga 2000) (holding that off-duty police officer employed as a security guard was entitled to qualified immunity against plaintiff's § 1983 claim, in large part because he wore his uniform, displayed his badge, was performing a police function in patrolling the apartment complex and investigating suspicious behavior, and used his authority as a police officer to detain and search

plaintiff);  Roberts v. City of Hapeville, No. 1:05-cv-1614-WSD, 2007 WL

521901, at *3, n.7 (N.D. Ga. Feb. 15, 2007) (finding off-duty police officer acting

as security officer at IHOP entitled to qualified immunity).  An off-duty police

officer also may be found to have acted within his discretionary authority when

taking law enforcement action after observing violations of the law.  See, e.g., Carr

v. State, 176 Ga. App. 113, 115, 335 S.E.2d 622, 624 (1985) (officers

moonlighting as security guards at concert were executing official duties when

they arrested fan for public drunkenness); Duncan v. State, 163 Ga. App. 148, 148-

149, 294 S.E.2d 365, 366 (1982) (uniformed officer moonlighting as motel bar

bouncer was executing official duties when he subdued patron who became unruly

and threatened to breach the peace).

Here, it is clear that Defendants—working as security guards for Home

Depot at the time of the encounter— were performing a police function by

patrolling the store in their DeKalb County Police Department uniforms,

investigating potential shoplifting, and ultimately using their authority as police

officers to detain and search Plaintiff.  Plaintiff does not dispute this fact.

Defendants, therefore, have shown they were acting within their discretionary

authority.

B.     Violation of a Clearly Established Constitutional Right

Because Defendants have shown they were acting within their discretionary authority, the burden shifts to Plaintiff to demonstrate that Defendants are not entitled to qualified immunity.  Holloman, 370 F.3d at 1264.  "To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  Id. at 1264.  Plaintiff asserts Defendants violated his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 by unlawfully arresting, searching, and citing him for disorderly conduct.  ([1] ¶¶ 39-58).  The Court addresses each alleged constitutional violation in turn below.

1.     First Amendment (Count 1)

To state a First Amendment violation pursuant to Section 1983, a plaintiff must show: (1) the plaintiff was engaged in speech or an act that was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech or act; and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act.   Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005); see also Thompson v. Hall, 426 F. App'x. 855, 859 (11th Cir. 2011) (finding First

Amendment rights of arrestee and his wife were not violated by the defendant

police officers because there was insufficient evidence to show the officers actions

would deter a person of ordinary firmness from engaging in protected speech).   In

Bennett, the Eleventh Circuit adopted the objective test for the second prong:

"[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct

would likely deter a person of ordinary firmness from the exercise of First

Amendment rights."  Id. (internal quotations and citations omitted).  With regard to

the causal connection prong, "the plaintiff must show that the defendant was

subjectively motivated to take the adverse action because of the protected speech."

Castle v. Appalachian Tech. Coll., 631F.3d 1194, 1197 (11th Cir. 2011).  "[O]nce

the plaintiff shows that her protected conduct was a motivating factor, the burden

shifts to the defendant to show that she would have taken the same action in the

absence of the protected conduct, in which case the defendant cannot be held

liable."  Id.

As determined in this Court's June 26, 2016 Motion to Dismiss Order [6]

("June 26th Order"), Plaintiff's statement that "[he] did not steal shit" does not

amount to fighting words and is thus protected speech.  ([6] at 14); see also

Merenda v. Tabor, 506 F. App'x 862, 868 (11th Cir. 2013).  An arrest or citation,

moreover, would deter a person ordinary firmness from exercising his First

Amendment rights. See Merenda v. Tabor, No. 5:10-cv-493 MTT, 2012 WL 1598134, at *11 (M.D. Ga. May 7, 2012). The question for the Court, then, is whether a causal connection exists between the retaliatory actions—Defendants' arrest and citation of Plaintiff—and the adverse effect on the constitutionally-protected speech or act. Plaintiff argues a causal connection exists because he was allegedly arrested under the Ordinance based solely on his speech. (See Compl. ¶ 9). Plaintiff states that "[h]e was arrested for the content of[] his speech, for criticizing the officers, and for daring to look an officer in the eye after being told not to do so." ([35] at 15). Defendants argue there is no causal connection between Plaintiff's speech and his arrest because Plaintiff was "not cited merely for his words, but rather his disorderly conduct as a whole." ([32.1] at 13).

The record, overall, shows that Plaintiff was arrested and cited for more than just his statement that "he did not steal shit." The police officers approached Plaintiff because they were initially concerned about a possible shoplifting incident. (D. SUMF ¶ 6; R-D. SUMF ¶ 6). Plaintiff, when asked about the incident, responded loudly and in an aggressive manner. (D. SUMF ¶ 8; R-D. SUMF ¶ 8; Neal Dep. at 16:20-21, 17:2-20, 18:8-12; (Affidavit of Muriel Holmes [42] ("Holmes Aff.") ¶¶ 6-12; Affidavit of Charles Burgess [41] ("Burgess

Aff.") ¶¶ 6-9). Plaintiff admits that he was upset and indignant, and that he became increasingly upset at Defendants when they asked him to submit to a search. (Id.) Plaintiff further admits that a number of customers and employees were in the vicinity during this time. (D. SUMF ¶ 11; R-D. SUMF ¶ 11; Neal Dep. at 16:11-25, 18:8-12). The affidavits of two Home Depot employees reveal that Plaintiff began to yell and shout, disturbed patrons and employees of the store, and that the environment became tense and hostile. (Holmes Aff. ¶ 11; Burgess Aff. ¶¶ 6, 8-9).

While Defendants concede Plaintiff was not combative, violent, did not call the officers names, and did not say anything demeaning, insulting, or degrading to Defendants or the others around them, Plaintiff's actions nevertheless constituted—on the whole—sufficient evidence that the disorderly conduct citation was the result of more than just Plaintiff's statement that "he did not steal shit." (Hamer Dep at 75:6-10; 45:6-46:10; Ings Dep. at 47:8-10, 23:13-25:16). That is, that Plaintiff acted "in a loud and boisterous, reckless[, or] unruly . . . manner for the purpose of . . . inciting another or a group of individuals in a public place." See Code of DeKalb County § 16–58. Plaintiff has failed to meet the third prong to show that Defendants violated Plaintiff's First Amendment rights—that Plaintiff's disorderly conduct arrest and citation was the result of his protected speech. The

Court finds there is no genuine dispute of material fact here, and Plaintiff's First Amendment claim pursuant to Section 1983 fails.

2. Fourth Amendment (Count 2)

"It is clearly established that an arrest made without probable cause violates the Fourth Amendment." Wilkerson v. Seymour, 736 F.3d 974, 978 (11th Cir. 2013) (quoting Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998)). "An officer is entitled to qualified immunity, however, where the officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiffs." Id. (quoting Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir.1990)). Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks omitted). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 245 (1983). Even "seemingly innocent activity" can be the basis for probable cause." Id. "Probable cause does

not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (quoting Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990).

Here, the record shows that a constitutional violation did not occur because the facts support that Defendants had "arguable probable cause" to arrest Plaintiff and search him. Code of DeKalb County § 16–58, the provision of law that the officers claim Plaintiff violated, and which the officers cited Plaintiff for following their search of Plaintiff outside of the Home Depot store, states:

> (a) It shall be unlawful for any person to act in a loud and boisterous, reckless, unruly or violent manner for the purpose of insulting, degrading, or inciting another or a group of individuals in a public place.

> (b) It is not the intent of this section to restrict any individual's right to free speech.

It is undisputed that Plaintiff spoke loudly and that he did so in a public place with other patrons and employees in the vicinity. Plaintiff admits in his deposition that he used profanity, spoke "pretty loud[ly]," was "upset" and "indignant about the situation," and that there were "all these people" within earshot that could hear his conversation with Defendants. (Neal Dep. at 16:16-17:12; 28:13-17). Two Home Depot employees also submitted affidavits confirming that Plaintiff spoke aggressively and loudly toward Defendants and used obscene language. (Holmes

Aff. ¶¶ 6-12; Burgess Aff. ¶¶ 6-9).  Due to Plaintiff's behavior it was reasonable for Defendants to believe that Plaintiff was in violation of the County ordinance, and, therefore, Defendants had arguable probable cause to effectuate the search and detention.

### 3.     Fifth and Fourteenth Amendments (Count 3)

Plaintiff also asserts that Defendants' actions of arresting and citing Plaintiff constituted a violation of his substantive due process rights under the Fifth and Fourteenth Amendments.  (Compl. ¶55; [35] at 4, 17-18).  "Plaintiffs face a high bar when attempting to establish a substantive due process violation as 'conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense.'"  Maddox v. Stephens, 727 F.3d 1109, 1119 (11th Cir. 2013) (quoting Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003.   "Even intentional wrongs seldom violate the Due Process Clause, and 'only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 ( 1998.  The Supreme Court has held that "[c]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action

most likely to rise to the conscience-shocking level." <u>County of Sacramento</u>, 523 U.S. at 849.

There is nothing in the record here showing that Defendants acted in an "arbitrary" or "conscience-shocking" manner toward Plaintiff. Defendants, as security officers and off-duty police officers, approached Plaintiff when his co-worker left the store with an empty package—setting off the store alarms. Defendants attempted to question Plaintiff about what happened, at which point Plaintiff spoke loudly, cursed at the officers, and became increasingly upset when asked to submit to a search. Plaintiff also admits that all of this occurred in front of a number of employees and customers. Because Defendants believed Plaintiff was in violation of the DeKalb disorderly conduct ordinance, they escorted Plaintiff out of the store and searched and cited him. There was nothing unusual or extraordinary about the encounter. Defendants were merely doing their job. Plaintiff has failed to allege material facts creating a genuine dispute as to whether Defendants acted in an arbitrary or conscience-shocking manner.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Officer C.A. Ings and Officer M.T. Hamer's, in their individual capacities, Motion for Summary Judgment [32]

is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Jason Neal's Motion for

Summary Judgment [35] is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED.**


**SO ORDERED** this 25th day of January, 2018.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE